USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 7/2/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

TRUSTEES FOR THE MASON TENDERS DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND AND TRAINING PROGRAM FUND, *et al.*,

Petitioners,

-against-

PRIME CONTRACTORS, INC.,

Respondent.

--------------------------------------------------------------X

1:25-cv-9532-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, District Judge:

Respondent Prime Contractors, Inc. violated its collective bargaining agreement and project labor agreements by failing to make contributions to various employee-benefit funds. Petitioners now seek to confirm an arbitration award obtained against Respondent as a result of that violation pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"). Petitioners have demonstrated that the arbitration proceeding was conducted in accordance with the parties' agreements, that the arbitration award draws its essence from the agreements, and that the arbitration award is based on undisputed evidence. Accordingly, the arbitration award is confirmed.

## I. BACKGROUND[1]

### A. The Parties

In this action, the Trustees of the Mason Tenders District Council Welfare, Pension, Annuity, and Training Program Funds (the "Funds"); Anna Gutsin, in her fiduciary capacity as Director of the Funds; and David Bolger, as Business Manager of the Mason Tenders District

[1] The undisputed facts are drawn from Petitioners' Local Rule 56.1 statement and sworn documents submitted in connection with this petition.

Council of Greater New York and Long Island (the "Union" and, together with the Funds and Gutsin, the "Petitioners"), seek to confirm an arbitration award pursuant to a collective bargaining agreement and two project labor agreements with Respondent. Dkt. No. 1 ("Petition") at 1–2; *id.* ¶ 3.

The Trustees of the Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). Dkt. No. 13 ("Savci Decl.") ¶ 3; Dkt. No. 14 ("Rule 56.1 Statement") ¶ 1. The Funds are based in New York City. Rule 56.1 Statement ¶ 2.

The Union is a labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142. *Id.* ¶ 3; Savci Decl. ¶ 7. The Union is based in New York City. *Id.* The Union represents certain employees of Respondent. *Id.*

Respondent is a construction contractor based in New York City. Rule 56.1 Statement ¶ 5. It has contracted to perform various construction projects for the City of New York. *Id.*

**B. The Collective Bargaining Agreement and Project Labor Agreements**

Since July 1, 2017, Respondent has been bound by a collective bargaining agreement with the Union called the Independent Collective Bargaining Agreement (the "CBA"). Savci Decl. Ex. 2 ("CBA"), Art. XII. Though its initial term ran through June 30, 2020, the CBA remains in effect through an evergreen provision under which it "shall renew from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate this Agreement." *Id.*; Savci Decl. ¶ 7.

Respondent was also bound to two project labor agreements through letters of assent executed by Respondent's President in 2018: the "Project Labor Agreement Covering Specified Renovation & Rehabilitation of New York City Housing Authority Buildings and Structures" (the

"NYCHA PLA") and the "Project Labor Agreement Covering Designated Renovation and Rehabilitation Work for Fiscal Years 2021–2025 on Behalf of the New York City School Construction Authority" (the "SCA PLA," and, together with the NYCHA PLA, the "PLAs"). Savci Decl. Ex. 2 ("SCA PLA"); Savci Decl. Ex. 1 ("Arbitral Award") at 2; Rule 56.1 Statement ¶ 5; Savci Decl. ¶ 7.

### C. Contributions and Audits under the Agreements

The PLAs and the CBA require signatory employers to pay contributions to the Funds, at specified rates, for all covered employees. SCA PLA Art. 11 § 2(A); CBA Art. VI §§ 4–7; Arbitral Award at 2. The trust agreements governing the Funds (the "Trust Agreements") provide that "[i]n order to effectuate the purposes hereof, each Employer shall remit to the Fund the amount required by the applicable Collective Bargaining Agreement." Savci Decl. Ex. 3 ("Trust Agreements"), Art. IX § 9.1(a). Under the PLAs, signatory contractors "agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds . . . with regard to Program Work done under this Agreement." SCA PLA Art. 11 § 2(c); *see also* Rule 56.1 Statement ¶ 10 (describing NYCHA PLA Art. 11 § 2(b) as providing the same). The CBA likewise bound Respondent to the Trust Agreements, providing that "[t]he Employer agrees to and shall be bound by all terms and conditions of the Trust Agreement creating the Trust Funds set forth in this Article of the Agreement and by any rules, regulations or By-Laws adopted by the Trustees of the Funds to regulate said Funds." CBA Art. VI § 15(i).

The CBA requires covered employers to make their books and records available at all reasonable times for inspection and audit by the accountants or other representatives of the Funds. CBA Art. VI § 17(a).

**D. Disputes under the Agreements**

The Funds' Trustees have adopted Arbitration Procedures and Rules Governing Employer Audits and Delinquency Disputes (the "Arbitration Rules"). Savci Decl. Ex. 4 ("Arbitration Rules"). The Arbitration Rules establish that arbitration is the mechanism for resolving "any disputes between the Fund and an Employer involving a Payroll Audit . . . and/or any claims by the Fund for Delinquent Contributions." *Id.* § II. The Trust Agreements authorize the Trustees, "in [their] sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer." Trust Agreements § 9.8. The CBA also expressly binds Respondent to "the Trust Funds' arbitration procedures for allegedly delinquent contributions and/or non-compliance with auditing requirements." CBA Art. VI § 15(i). The CBA designates the arbitration panel for such proceedings, providing that "[a]n arbitrator shall be selected from the following rotating panel . . . : Robert Herzog and Joseph A Harris." CBA Art. X § 1(b).

The Trust Agreements provide that, in any legal action for unpaid contributions, the employer must pay the Funds "all Unpaid Contributions due and payable," interest on those contributions, "interest on the Unpaid Contributions as and for liquidated damages," and "all attorneys' fees and costs of the action," as well as reasonable expenses attributable to any audit. Trust Agreements § 9.9; *see also* CBA Art. VI § 17(g). An employer in default for ten business days is further obligated to pay interest from the due date "in the amount determined by using the rate prescribed under section 6621 of Title 26 of the United States Code." Trust Agreements § 9.5(a).

**E. The Underlying Dispute and Arbitration**

Pursuant to the terms of the CBA and the Trust Agreements, the Funds' auditors conducted an audit of Respondent covering the period from March 30, 2020 through October 1, 2023. Savci Decl. ¶ 2; Petition ¶ 13. The audit calculated that Respondent had failed to remit $185,290.76 in

contributions. Rule 56.1 Statement ¶¶ 19–20; Savci Decl. ¶ 21; Savci Decl. Ex. 7 ("Deficiency Report").

After conducting the audit, the Funds initiated arbitration before Joseph A. Harris (the "Arbitrator"). Savci Decl. Ex. 6. The Funds served Respondent with a notice and demand for arbitration on July 16, 2024. *Id.*; Savci Decl. ¶ 19. The arbitration was held on September 18, 2024. Savci Decl. ¶ 20. Jackie Nasta, Respondent's bookkeeper, appeared on Respondent's behalf. *Id.* Nasta agreed with the auditors' findings and did not dispute the Funds' claim. *Id.* ¶ 21.

In a November 18, 2024 decision, the Arbitrator determined that Respondent had violated the CBA and the PLAs by failing to make contributions to the Funds. *Id.* ¶¶ 21–22; Arbitral Award 1–2. He awarded Petitioners $310,459.81, consisting of $185,290.76 in total principal, $13,103.73 in dues and Political Action Committee ("PAC") contributions, $27,856.68 in interest, $27,856.68 in liquidated damages, $54,351.96 in imputed audit costs, $500.00 in attorneys' fees, and $1,500.00 in arbitration costs. Arbitral Award at 2. Petitioners served Respondent with a demand for payment of the award, forwarding a copy of the award to Respondent. Savci Decl. ¶ 23.

"There have been no payments made against the Award." *Id.*

**F. Relief Sought**

Petitioners now seek confirmation of the Award "in all respects." *Id.* ¶ 2. They seek: (1) judgment in the amount of $310,459.81, the outstanding balance due under the Award; and (2) post-judgment interest at the statutory rate, accruing from the date of judgment until Respondent pays in full. Petition ¶ 18. Petitioners do not seek an award of attorneys' fees or costs incurred in bringing this petition. *See* Petition; Dkt. No. 15.

**G. Procedural History**

Petitioners filed a petition to confirm the arbitration award on November 14, 2025. Petition. They moved for summary judgment on January 15, 2026. Dkt. No. 11. Respondent has not entered

an appearance or made any filings with the Court despite being properly served with the summons, petition, motion for summary judgment, and all other relevant filings. *See id.* at 3; Dkt. No. 10.

## II. LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 [], provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-4421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

"[A]n arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (internal quotation marks omitted); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union*, *Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

## III. DISCUSSION

The unopposed evidence submitted by Petitioners demonstrates that they are entitled to confirmation of the Award and to post-judgment interest.

### A. Confirmation of the Arbitration Award

There is no reason to believe that Petitioners procured the Award through fraud or dishonesty, or that the Arbitrator disregarded the CBA, the PLAs, or the Trust Agreements, or acted outside the scope of his authority as arbitrator. To the contrary, the record indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See* Arbitral Award at

1–2. Accordingly, the Court grants Petitioners' motion and confirms the Award in the amount of $310,459.81.

**B. Post-Judgment Interest**

Petitioners also request post-judgment interest accruing from the date of judgment until Respondent pays in full. Petition ¶ 18. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (quotation omitted), and this mandate applies when confirming arbitration awards, *see, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

**IV. CONCLUSION**

For these reasons, the petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment for Petitioners in the amount of $310,459.81. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full. The Clerk of Court is further directed to terminate all pending motions, adjourn all deadlines, and to close this case.

Petitioners are directed to serve a copy of this order on Respondent and retain proof of service.

SO ORDERED.

Dated: July 2, 2026
New York, New York

GREGORY H. WOODS
United States District Judge